# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*2:31 pm, Sep 07, 2021*
**JEFFREY P. COLWELL, CLERK**

Civil Action No. _____
(To be supplied by the court)

WILLIAM MONTGOMERY _____, Plaintiff

v.

MORGAN ARRICK _____,

JAMES HOLLY _____,

_____,

_____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

## COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

A. **PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

WILLIAM MONTGOMERY, 2443 S University Blvd PMB 129, Denver, CO, 80210
(Name and complete mailing address)

(970) 412-5463 / zoinbergs@gmail.com
(Telephone number and e-mail address)

B. **DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: MORGAN ARRICK, Police Officer, in her individual capacity.
(Name and complete mailing address)

9110 Yates St, Westminster, CO  80031  /  (303) 658-4360
(Telephone number and e-mail address if known)

Defendant 2: JAMES HOLLY, Police Officer, in his individual capacity.
(Name and complete mailing address)

9110 Yates St, Westminster, CO  80031  /  (303) 658-4360
(Telephone number and e-mail address if known)

Defendant 3: _____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

Defendant 4: _____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

**C.    JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☑  Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

42 U.S.C. § 1983 Of The United States Constitution

Violations Of The Fourth Amendment

☐  Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.*)

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:        *42 U.S.C. § 1983* – ***Violations Of The Fourth Amendment (Two Claims)***

## INTRODUCTION

Plaintiff William Montgomery, proceeding *pro se*, hereby states and alleges as follows:

1. This is a Fourth Amendment civil rights action seeking damages against two Westminster police officers for their misconduct in unlawfully searching and arresting Plaintiff, for a crime that he could not have committed, which needlessly caused him loss of liberty, emotional distress, and other dignitary injuries.

2. One evening Plaintiff went shopping at a Walmart Superstore. He selected and paid for his merchandise, just as any regular customer would. Upon exiting the store, he was asked for his receipt by a Walmart employee who had been "posted up" at the store's exit, and to which in response he politely declined to provide (as he had learned in the past he was not required by any law or store policy to do). Soon thereafter, the store employee – and eventually several other store employees – surrounded Plaintiff, detained him, slandered him, assaulted him, took his items from him, and held him inside their store while summoning the local police for assistance. While contacting the police, a store employee informed them that they had video footage available, from the store's surveillance system, of Plaintiff stealing merchandise. Of course, this was all a lie, as no such theft had ever taken place. Nevertheless, shortly after being summoned, two Westminster police officers arrived at the

### D. STATEMENT OF CLAIMS

store, and upon meeting Plaintiff, immediately cuffed him, searched him, and placed him in the back of their patrol vehicle while they waited for the store's employees to perform a [completely backwards] investigation of him. Eventually, after several minutes, Plaintiff's innocence was verified, and he was let go by the officers with items in hand.

3. Plaintiff William Montgomery now seeks vindication regarding the wrongful search and arrest of him, and a remedy for the loss of liberty, emotional distress, and dignitary injuries he suffered by the violation of his Fourth Amendment rights.

### FACTUAL BACKGROUND

4. Plaintiff incorporates all preceding paragraphs by reference.

5. On or about September 6, 2019, at approximately 9:02pm, Plaintiff William Montgomery entered the Walmart Superstore located at 200 W 136th Ave, Westminster, CO, 80234, to go shopping.

6. As Plaintiff went shopping, he selected items directly off the shelves, and never once observed any store employees follow him as he walked them directly to a front register. He then paid for his items, eschewed the placement of them into plastic bags for environmental

reasons, and proceeded toward one of the store's exits located just around the corner.

7. At approximately 9:26pm, Plaintiff began to leave the Walmart Superstore. As he did so, he was asked by a store employee who had been "posted up" at the store's exit if he could show him a receipt for his merchandise. Plaintiff politely declined the request. Immediately upon declining however, the store employee – and soon thereafter three more store employees who had been "posted up" nearby in a similar fashion – quickly surrounded Plaintiff to detain him inside their store for purportedly shoplifting merchandise. Having been "posted up" <u>strictly</u> at the store's exit, however, *and literally nothing more*, it was clear that none of the store employees had formed a "reasonable belief" that Plaintiff had committed the act of theft by otherwise observing him a) take merchandise off the store's shelves, b) conceal it, and c) pass all points of sale without paying for it. Indeed, it was evident by their actions that none of the store employees had observed Plaintiff <u>literally pay for his merchandise at the nearby registers, located mere feet away, just seconds prior</u>! Thus, they utterly lacked shopkeeper's privilege for their actions taken to detain him.

8. Once the employees surrounded Plaintiff, they slandered him as a thief in front of others [who then offered to pay for his merchandise as a result]. Then, they assaulted him as they touched him and his cart in an effort to prevent both from leaving. Then, they took most of his items out of his hands and from his cart. And finally, they continued to surround Plaintiff to prevent him from leaving their store while they summoned the local police for assistance. During the fiasco, Plaintiff managed to maintain possession of only one of his items – a Clif Bar – to which he placed in his right jacket pocket so as to further prevent any store employees from taking from him otherwise.

9.      Xavion Cawins, one of the store employees who had been detaining Plaintiff, was the one who had contacted the police for assistance. During his phone call with police dispatch, Cawins informed them that Plaintiff was confronted by employees at the store's exit, asked for his receipt by them, and was refusing to show it to them. Dispatch then asked if Plaintiff was saying anything to the employees, of which Cawins responded by stating that Plaintiff had said to them, "These are my items." Cawins then stated that while nobody had personally observed Plaintiff conceal any merchandise, he nonetheless had obtained video footage, from the store's surveillance system, of Plaintiff stealing merchandise. Of course, this was all a lie, as no such theft (or anything even remotely resembling a theft) had ever taken place. Nevertheless, the store employee was informed that members of the Westminster Police Department would be shortly on their way.

10.     Within a few minutes, Defendant Westminster Police Officer Morgan Arrick (Morgan Ayres at the time) and Officer James Holly arrived on scene, at the Walmart Superstore, to begin their investigation. At the time of their arrival, Plaintiff William (and the store employees who were detaining him) were still located inside the store, halfway in-between its two exits, and behind its checkout registers.

11.     Defendant Arrick was the first to approach Plaintiff William. Upon approach, Arrick asked Plaintiff, "Hey, what's going on? What's going on tonight?" But before providing Plaintiff with ***EVEN A SINGLE SECOND*** to answer her question, however, Arrick <u>immediately</u> demanded that he turn around and place his hands behind his back. Without issue, Plaintiff complied. Defendant Arrick then placed Plaintiff in handcuffs.

12. Both Defendant Officers Arrick and Holly then escorted Plaintiff out of the building. Shortly after exiting, they decided to commence a full-blown custodial inventory of him just outside the exit's vestibule. The following are excerpts of the conversation that took place between both Defendants and Plaintiff William, as captured via William's cell phone:

ARRICK: *"Listen to me. When I show up, okay, and someone's accused of theft, we put them in handcuffs immediately in case they have weapons. That's why you're in handcuffs, okay? It's not up for debate."*

WILLIAM: *"That is..."*

ARRICK: *"It's not up for debate."*

WILLIAM: *"...against the law. Yeah it is."*

ARRICK: *"I'm trying to explain it to you, okay?"*

WILLIAM: *"I will take it up with the judge."*

ARRICK: *"So, they have told us that you have concealed merchandise in your pockets. You are in custody now, for theft, and I am going to search you. Okay? Separate your feet."*

WILLIAM: *"When you say custody, am I under arrest for theft?"*

ARRICK: *"Yes you are."*

- - -

HOLLY: *"Here's the deal. They're alleging that you stole something. Okay? If, if you didn't, handcuffs come off as easily as they go on. Okay? Let us do our investigation, but obviously you can see that we got people in there, who are getting involved, who are yelling at us; not just you. We don't know if they're with you; we*

*don't know what's going on; we're just stepping into the situation here. Okay? So there's a thing called allowin- we're allowed to put handcuffs on you; it's an investigatory detention. Okay? They're claiming that you walked out and stole."*

WILLIAM: *"You have to have reason to believe that I am armed and dangerous."*

HOLLY: *"No, I don't."*

WILLIAM: *"Yes. Oh man. I'll see you in court."*

HOLLY: *"Please do. It's called Terry versus Ohio. I'll give you the exact court case. Terry versus Ohio."*

WILLIAM: *"What indicators do you have that I am armed and dangerous?"*

HOLLY: *"All I have- all I gotta do is detain."*

*- - -*

HOLLY: *"So like I said man, I'm, I'm up here, we're just here investigating. Handcuffs can come off easy as they go on."*

WILLIAM: *"Well..."*

HOLLY: *"Hold on. Just listen. What's your first name?"*

WILLIAM: *"...this is past an investigation. You, you just charged me. This is definitely an a, an arrest."*

HOLLY: *"If, if you don't agree with it, you can take it up with..."*

WILLIAM: *"The judge!"*

HOLLY: *"...them and the court."*

WILLIAM: *"Yeah, no, and you too. Yeah, no, you don't have probable cause."*

HOLLY: *"Yeah, oh, I don't need it. I need reasonable suspicion, to detain you."*

WILLIAM: *"She already said it was an arrest."*

HOLLY: *"Okay. I need reasonable suspicion to detain you..."*

WILLIAM: *"You need..."*

HOLLY: *"...for officer safety. Shut up and listen!"*

WILLIAM: *"You need probable cause to search."*

HOLLY: *"It's call Terry versus Ohio. I'm allowed to frisk you for weapons. They're telling us you're concealing items and they have it on camera. That's enough to go into your pockets to get those items. And if they..."*

WILLIAM: *"Uh, nope."*

HOLLY: *"Okay, shut up. We're done with you man."*

ARRICK: *"Hey, Officer Holly. Did they say what it was, and [where] it was concealed?"*

HOLLY: *"No. They just say he had concealed items."*

ARRICK: *"Okay, so since he's a male, if you want to do a better search?"*

HOLLY: *"Yep, bring him over to my car."*

13. It should be noted that immediately prior to this moment in time, while Plaintiff was speaking with Defendant Holly, Defendant Arrick performed an outer layer pat-down of him, but otherwise never once felt anything during its execution that even remotely resembled that of a dangerous weapon (nor did she ever ask Plaintiff about what she had been feeling, either).

14. Defendant Holly then proceeded to conduct a full-blown custodial inventory of Plaintiff next to his patrol vehicle. Without conducting any pat-down of his own first, Defendant Holly went directly into all of Plaintiff's pockets and removed his keys, wallet, cell phone, a store receipt, and the sole remaining paid for item Plaintiff still had on him – the Clif Bar. As mentioned above, none of these items even remotely resembled, nor would have remotely felt like, that of a dangerous weapon.

15. After performing the full-blown custodial inventory of him, both Defendants then placed Plaintiff in the back of their patrol vehicle, for the next seven minutes, while they waited for the store employees to investigate into whether Plaintiff had paid for his merchandise or not. Shockingly, for the entirety of their visit to the Walmart Superstore, neither Defendant actually left the side of their patrol vehicle, to actually go into the store, to actually conduct their own investigation into the matter. They did not interview potential witnesses themselves, view potential video footage themselves, or compare potential register records against receipts themselves, to otherwise confirm or refute Plaintiff's innocence themselves. Rather, the Defendants simply waited for the store employees to complete their investigation *for* them, come outside and speak *to* them, and exonerate Plaintiff *on behalf of* them.

16. Once Plaintiff was exonerated, the Defendants let him out of their patrol vehicle, removed their handcuffs from him, returned his merchandise to him, and sent him on his way while simultaneously telling him to leave the store's property at the request of its employees (and to which Plaintiff promptly did, without issue, with all items finally back in his possession).

### FIRST CLAIM FOR RELIEF

*42 U.S.C. § 1983 – Fourth Amendment Violation – Unreasonable Search And Seizure Absent Arguable Reasonable Suspicion*

**(Against Both Named Defendants)**

17. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

18. Defendants Morgan Arrick and James Holly patted down, and then full-blown custodially inventoried Plaintiff William Montgomery, but did so without possessing the necessary, requisite, arguable, reasonable, articulate, individualized, particularized suspicion to believe that he was armed and dangerous. Plaintiff was under investigation for nothing more than a petty crime. The investigation of him took place in a well-lit public location. Plaintiff was cooperative with the Defendants at all times, and showed no signs of aggression. Not only was there no legitimate reason to believe that he was armed and dangerous to justify the pat-down of his person, said pat-down that occurred anyways revealed absolutely nothing that a reasonable person would reasonably believe to even remotely feel like a weapon – thus rendering the full-blown custodial inventory of him that immediately followed just as patently illegal. See *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968).

19. The intentional and/or reckless conduct as described herein, committed by the Defendant Officers while acting under color of state law, deprived Plaintiff William Montgomery of the rights, privileges, liberties, and immunities secured by the Constitution

of the United States of America, including the right to be free from unlawful searches and seizures guaranteed by the Fourth Amendment, made actionable pursuant to 42 U.S.C. § 1983, and which proximately caused Plaintiff dignitary injuries and other emotional harms.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth Amendment Violation
– Unlawful Arrest Absent Arguable Probable Cause*
**(Against Both Named Defendants)**

20. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

21. Defendants Morgan Arrick and James Holly arrested Plaintiff William Montgomery, but did so without possessing the necessary, requisite, arguable probable cause to do so with. Upon Plaintiff's arrest, not only did both Defendants have no earthly idea what Plaintiff had even purportedly stolen, the sole piece of "evidence" they had to work with was that of store video footage purportedly in the possession of non-eyewitness store employees, but to which the Defendants didn't even bother to view themselves. Of course, nothing even remotely resembling a theft had been (nor would have been) captured on said footage, anyways, since Plaintiff never stole anything. Nevertheless, by "wholesale delegating their probable cause determination" to that of the store employees, the Defendants failed to conduct the constitutionally mandated "independent investigation" of their own into the matter, and thus, lacked arguable probable cause entirely for their hasty actions. See *Baptiste v. J.C. Penney Company, Inc.*, 147 F.3d 1252 (10th Cir. 1998).

Moreover, at the exact point of Plaintiff's arrest – likely the point at which handcuffs were placed on him – Defendant Arrick had not given Plaintiff **even a single second** to explain his side of the story (of which he was more than prepared to offer), thus providing her with even less probable to arrest than ever before. See *Lusby v. T.G. Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir. 1984) and *Harbin v. City of Albuquerque,* No. CIV 05-550 LCS/RLP (D.N.M. Apr. 12, 2006).

22. The intentional and/or reckless conduct as described herein, committed by the Defendant Officers while acting under color of state law, deprived Plaintiff William Montgomery of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to be free from unlawful arrests guaranteed by the Fourth Amendment, made actionable pursuant to 42 U.S.C. § 1983, and which proximately caused Plaintiff loss of liberty and other emotional harms.

E.   **REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against the Defendants for compensatory damages, punitive damages against the Defendants, pain and suffering, emotional distress, and dignitary damages, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

**PLAINTIFF DEMANDS TRIAL TO
A JURY ON ALL ISSUES SO TRIABLE.**

F.   **PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

s/ William Montgomery
(Plaintiff's signature)

2021 / 09 / 06
(Date)

(Revised December 2017)